IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GRAHAM EVATT, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiff, | ) | |
| | ) | _____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| THE CITY OF ATLANTA, | ) | |
| | ) | |
| OFFICER JOHN HORDESKY, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| OFFICER JAMES DOUGLAS, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| OFFICER JOHN DOE(S) 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT FOR DAMAGES

---

**COMES NOW** Plaintiff Graham Evatt (hereinafter referred to as "Plaintiff Evatt") in the above styled action and files this Complaint for Damages.

### <u>INTRODUCTION</u>

This is a civil rights actions under 42 U.S.C. § 1983, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and Georgia law. Plaintiff Evatt alleges that he was unlawfully detained and arrested by the

Defendant-law enforcement officers, without arguable probable cause, while attempting to exercise his First Amendment rights. This unlawful arrest violated Plaintiff Evatt's First and Fourth Amendment rights. Plaintiff Evatt alleges that the interference with his First Amendment rights, and later unlawful and unreasonable detention and arrest, was in retaliation for said lawful exercise of his First Amendment rights. Plaintiff Evatt further alleges that he was maliciously prosecuted, under both Federal and Georgia laws, by the Defendant-law enforcement officers and the City of Atlanta. Plaintiff alleges that his unlawful arrest without his consent constitutes assault and battery under Georgia law, and that said assault and battery was conducted with malice as to preclude Defendants from asserting official and/or qualified immunity.

Finally, Plaintiff Evatt alleges the City of Atlanta is subject to municipal liability under the *Monell* doctrine because (1) his arrest stems from an unconstitutional, unofficial custom and practice, maintained by the City of Atlanta, to arrest and charge protesters who exercise their First Amendment rights in opposition of law enforcement with Pedestrian in the Roadway; and (2) the decision to arrest and charge Plaintiff Evatt, without arguable probable cause was ratified by a final policymaker for the City of Atlanta, to wit, Mayor Andre Dicken and/or Chief of Police Darin Schierbaum.

## PARTIES

### 1.

Plaintiff Graham Evatt (hereinafter referred to as "Plaintiff Evatt") is a resident of the State of Georgia, a United States citizen, and over the age of eighteen. He currently resides in Decatur, Georgia.

### 2.

Defendant City of Atlanta (hereinafter referred to as "the City") is a municipality whose policies, practices, and final policymakers were the moving force in the constitutional violation here. The City can be served at 55 Trinity Ave. SW, Atlanta, GA 30303.

### 3.

At all times relevant to this lawsuit, Defendant City of Atlanta acted under the color of law.

### 4.

Defendant John Hordesky (hereinafter "Defendant-Officer Hordesky") is an Officer employed by the City of Atlanta Police Department. Defendant-Officer Hordesky may be served at the headquarters of the City of Atlanta Police Department located at 226 Peachtree St. SW, Atlanta, GA 30303 in Fulton County, Georgia.

5.

At all times relevant to this lawsuit, Defendant Hordesky acted under the color of law.

6.

Defendant-Officer Hordesky is sued in his individual capacity.

7.

Defendant James Douglas (hereinafter "Defendant-Officer Douglas") is an Officer employed by the City of Atlanta Police Department. Defendant-Officer Douglas may be served at the headquarters of the City of Atlanta Police Department located at 226 Peachtree St. SW, Atlanta, GA 30303 in Fulton County, Georgia.

8.

At all times relevant to this lawsuit, Defendant Douglas acted under the color of law.

9.

Defendant Douglas is sued in his individual capacity.

10.

All defendants reside in the Northern District of Georgia.

11.

Defendants John Doe(s) are City of Atlanta Policers assigned to the Zone 5 Field Investigations Team who were involved in the arrest of Plaintiff Evatt. These

individual officers are unknown to Plaintiff Evatt at this time. Said officers will be identified during the course of discovery.

## **JURISDICTION AND VENUE**

### 12.

This case presents a federal question under the First, Fourth, and Fourteenth Amendments, and this Court has subject matter jurisdiction under 28 U.S.C. § 1331. Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

### 13.

The Court has personal jurisdiction of the Defendants under 28 U.S.C. § 1367 and Ga. Const. Art. I, § 1, ¶¶ V, XIII.

### 14.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this judicial district and the Defendant reside within this district.

### 15.

All of the parties herein are subject to the jurisdiction of this Court.

16.

Attorney's fees and costs are authorized under 42 U.S.C. § 1988.

17.

Plaintiff Evatt also has standing to bring his Georgia law claims because he timely submitted an Ante Litem Notice of Claims pursuant to O.C.G.A. § 36-33-5.

## FACTUAL ALLEGATIONS

18.

On January 21, 2023, Plaintiff Evatt traveled to the downtown area of the City of Atlanta to participate in an organized protest against the construction of the Atlanta Public Safety Training Center, commonly referred to as "Cop City." This protest was also in response to the killing of protester Manuel Esteban Paez Terán by law enforcement.

19.

The City authorized and sanctioned this organized protest by blocking off certain streets to allow protesters to walk down and peacefully demonstrate. During a press conference after the events alleged in this complaint, Chief Schierbaum stated, "[APD] was deployed to protect that right to protest."

20.

Upon information and belief, the City actively monitored the protest and allowed it to take place.

21.

Plaintiff Evatt was not a member of any entity or group that organized the protest; rather, he simply saw a flyer about the protest and decided to participate in the same with a friend.

22.

Plaintiff Evatt drove to the area of the protest with a friend and arrived at approximately 5:00 p.m. Plaintiff Evatt then parked his vehicle in a parking garage connected to the Underground Atlanta area.

23.

Plaintiff Evatt and his friend then exited the parking garage and walked toward a crowd that had gathered around the Underground Atlanta area near the intersection of Peachtree Street and Upper Alabama Street, Atlanta, Georgia 30303.

24.

Because Plaintiff Evatt and his friend arrived late, they were at the back of the crowd. Originally, the crowd was supposed to march southbound on Peachtree but at some point, decided to walk northbound. As a result, Plaintiff Evatt and his friend ended up in the front of the protest.

25.

After they listened to at least one of the speakers, Plaintiff Evatt and his friend began to walk northbound on Peachtree Street with the crowd of protesters. At some

point while walking with the crowd of protesters, Plaintiff Evatt noticed a sign carried by some of the protesters was sagging in the middle. The sign (hereinafter referred to as "the Sign") read: "Trees give life. Police take them."

26.

Plaintiff Evatt did not know the protesters who were carrying the Sign. However, to prevent the sign from sagging, Plaintiff Evatt and his friend began holding the middle of the sign as he continued to protest.

27.

Importantly, Plaintiff Evatt and the other protesters carrying the sign were positioned at the front of the crowd as the protesters continued to march northbound.

28.

As the protest continued, Plaintiff Evatt lawfully and peacefully marched and chanted with the crowd while holding the sign: both protected activities under the First Amendment.

29.

As the protesters approached the area commonly referred to as "Peachtree Center," unbeknownst to Plaintiff Evatt, other protesters began smashing windows and engaging in other criminal activity that resulted in damaged property. While peacefully protesting, Plaintiff Evatt also heard the sound of fireworks.

30.

At no point did Plaintiff Evatt ever set off any fireworks, set fire to or otherwise damage any other property, or act in an unlawful manner.

31.

As the protesters approached the intersection of Peachtree Street and John Portman Boulevard, Officers employed by the City of Atlanta Police Department, including Defendant-Officers Douglas and Hordesky, arrived to confront the crowd.

32.

Upon information and belief, Defendant-Officers had prepared zip-ties to act as makeshift handcuffs in preparation of arresting the protesters.

33.

The Officers, including Defendant-Officers Douglas and Hordesky, were walking southbound on Peachtree Street toward the protesters, while the protesters, including Plaintiff Evatt, were walking northbound on Peachtree Street toward the officers.

34.

When the officers encountered the crowd, Defendant-Officers Douglas and Hordesky immediately approached Plaintiff Evatt, threw him to the ground, and arrested him while he was peacefully protesting and holding the sign.

35.

Prior to approaching and arresting Plaintiff Evatt, Defendant Officer Douglas, Defendant Officer Hordesky nor any other officer commanded or instructed him to disperse or withdraw from the protest and/or the roadway.

36.

At the time of his arrest, Plaintiff Evatt complied with the Defendant-Officers commands and did not resist arrest or otherwise obstruct either Defendant-Officer Douglas or Defendant-Officer Hordesky.

37.

Neither Defendant-Officer Douglas nor Defendant-Officer Hordesky or any other officer observed Plaintiff Evatt damage any property, including any government property.

38.

Neither Defendant-Officer Douglas nor Defendant-Officer Hordesky nor any other officer observed Plaintiff Evatt use an explosive or fire to cause damage to any property, including any government property.

39.

Neither Defendant-Officer Douglas nor Defendant-Officer Hordesky nor any other officer observed Plaintiff Evatt obstruct or hinder any law enforcement officer in the lawful discharge of his or her official duties.

40.

Neither Defendant-Officer Douglas nor Defendant-Officer Hordesky or any other officer observed Plaintiff Evatt commit an unlawful act of violence or any other act in a violent or tumultuous manner.

41.

Neither Defendant-Officer Douglas nor Defendant-Officer Hordesky or any other officers observed Plaintiff Evatt act in an unlawful manner.

42.

Subsequent to his arrest, Plaintiff Evatt was forced to sit in the back of a marked patrol car for approximately 30-to-45 minutes without being told why he was arrested.

43.

Plaintiff Evatt was eventually transported to the Fulton County Courthouse. Once at the Fulton County Courthouse, Officers parked in a parking garage connected to the courthouse and forced Plaintiff Evatt to remain in the back of the marked patrol car for several hours. On the way to the Courthouse, Plaintiff Evatt asked the officers why he was being arrested, and they responded: "pedestrian in a roadway."

44.

At some later time while still handcuffed in the back of a marked patrol unit, Plaintiff Evatt asked Defendant-Officer Hordesky for an update about his status. In response, Defendant-Officer Hordesky stated, in essence, that the City was going to make a big deal out of the protest and Plaintiff Evatt's arrest.

45.

At all times relevant hereto, Chief Schierbaum was a final policymaker by virtue of Atlanta Code of Ordinances § 98-26. At all times relevant hereto, Mayor Andre Dickens was a final policymaker by virtue of, among other ordinances, Atlanta Code of Ordinances § 2-183.

46.

Eventually, Plaintiff Evatt was charged with the following crimes:

(a) Domestic terrorism;

(b) Arson in the first degree;

(c) Criminal damages to property in the second degree;

(d) Interference with government property;

(e) Pedestrian in roadway;

(f) Willful obstruction of law enforcement officers;

(g) Rioting; and

(h) Unlawful assembly.

47.

Following Plaintiff Evatt's arrest, Mayor Dickens and Chief Schierbaum held a press conference as final policymakers for the City. During that press conference, Mayor Dickens stated: "My message is simple to those who seek to continue this type of criminal behavior—We will find you and we will arrest you, and you will be held accountable." At that same press conference, Chief Schierbaum stated: "It doesn't take a rocket scientist or an attorney to tell you that breaking windows and setting fires, that's not protesting, that's terrorism [ ] and they will be charged accordingly.

48.

Upon information and belief, Mayor Andre Dickens and City of Atlanta Police Chief Schierbaum were final policymakers when charging Plaintiff Evatt with the above referenced criminal offenses. At the very least, Mayor Dickens and Chief Schierbaum, as final policymakers for the City, adopted and/or ratified the arrest of Plaintiff Evatt with the above-referenced charges.

49.

Importantly, at the time of his arrest, Defendant-Officers and the City of Atlanta lacked probable cause to arrest Plaintiff Evatt with any of the above referenced criminal offenses.

50.

At the time of his arrest, Defendant-Officer and the City of Atlanta lacked arguable probable cause to arrest Plaintiff Evatt with any of the above referenced criminal offenses.

51.

Eventually, Plaintiff Evatt was transported to the Fulton County Jail and processed.

52.

As a result of his arrest, Plaintiff Evatt had to hire an attorney to represent him.

53.

On January 22, 2023, Plaintiff Evatt appeared before a Fulton County Magistrate Judge for first appearance, at which time the Prosecutor accused Plaintiff Evatt of being the "ringleader" because he was a local resident. The prosecutor also stated Plaintiff Evatt was likely the organizer of many of the BLM protests that turned violent because he lived in the same county as a known organizer.

54.

At the conclusion of the bond hearing, the Judge set an excessive bond amount of $355,000.00. Plaintiff Evatt's parents attempted to post a property bond, but the amount of equity in their home was too small. After being told that they needed an

additional $19,000.00 in equity in their property to satisfy the property bond, Plaintiff Evatt's parents pulled $20,000.00 from his school-savings account and paid it toward the mortgage of their home. Thereafter, they attempted to post a property bond a second time, but were told that it would take approximately seven (7) days for the system to realize the additional equity in their home.

55.

Plaintiff Evatt remained in the custody of the Fulton County Jail for five (5) days while his parents attempted to find funds to satisfy the bond amount. Eventually, Plaintiff Evatt was released after a bond was posted. As a part of his bond conditions, Plaintiff Evatt was required to:

a. Observe a 24-hour curfew except for court appearances, meetings with attorney, work, school, and religious services;
b. Not be in possession of any weapons; and
c. Wear an ankle monitor.

56.

Plaintiff Evatt was also required to avoid contact with the co-defendants in his case. Again, however, Plaintiff Evatt did not know any of his co-defendants, and the City knew this fact prior to lodging all of the criminal charges against him, including the charge of being a Domestic Terrorist.

57.

After his release from the Fulton County Jail, Plaintiff Evatt discovered that he had contracted scabies while inside the jail that required medical treatment. His treatment lasted approximately six (6) months.

58.

On August 29, 2023, a Fulton County Grand Jury returned an 18-Count Indictment, naming 61 individuals, including the five individuals arrested alongside Plaintiff Evatt on January 21, 2023. That Indictment alleges those individuals engaged in a RICO conspiracy and 225 separate overt acts that occurred between in or around May of 2020 and lasted through in or around August of 2023. That indictment also alleges that those individuals engaged acts of Domestic Terrorism, Arson in the First Degree, and Money Laundering, all in violation of Georgia law. Importantly, Plaintiff Evatt was not named in that Indictment or any other Indictment.

59.

On December 11, 2023, i.e., nearly eleven (11) months after his arrest, the Fulton Conty District Attorney's Office filed a "Declination To Prosecute" Plaintiff Evatt for the above referenced criminal offenses. Notwithstanding that Declination of Prosecution filed by the Fulton County District Attorney's Office, Plaintiff Evatt knew that the Office of Attorney General of the State of Georgia was handling the

prosecution of the case, not the Fulton County District Attorney's Office. To that end, Plaintiff Evatt learned that the Attorney General's Office was still contemplating charging Plaintiff Evatt with the above referenced criminal offenses.

60.

It was not until the Summer of 2024, i.e., over a year and a half after the protest, that Plaintiff Evatt finally learned that the Attorney General's Office declined to pursue a prosecution against him for the above referenced charges.

61.

Despite the fact that all of the above reference charges have been dismissed, the charges still appear on Plaintiff Evatt's criminal history. As such, in the event that Plaintiff Evatt has a future encounter with a law enforcement officer and that officer runs Plaintiff Evatt's criminal history, that officer will be able to see all of the above referenced charges, including the charge of Domestic Terrorism.

62.

Undoubtedly, the charge of Domestic Terrorism has adversely branded him for life and will forever haunt him. His status as a law-abiding citizen, as he knew it, will never be the same.

63.

In fact, on August 27, 2024, Plaintiff Evatt flew back into the United States after having spent time on a family vacation abroad. Upon coming through customs,

Plaintiff Evatt was detained for secondary inspection and investigation. He was questioned at length and held against his will as a result of the Domestic Terrorism charge.

64.

Furthermore, Plaintiff Evatt's name, image, and other identifying information have been posted to far-right websites, such as antifawatch.net. This has resulted in him and his family receiving threats and harassment, despite being cleared of any wrongdoing.

65.

Plaintiff Evatt's life will never be the same.

## **COUNT I**

42 U.S.C. § 1983
Unlawful Seizure in violation of Fourth Amendment
(As to All Defendants)

66.

Paragraphs 1 through 65 are hereby re-alleged as if fully pled herein.

67.

The facts within the Officers' knowledge were not sufficient to establish probable cause that Plaintiff Evatt committed the charges alleged.

68.

Despite the lack of probable cause for any of the crimes alleged, Defendant-Officers Hordesky, Douglas, and John Doe(s) placed Plaintiff Evatt under arrest.

69.

Based upon the facts known by the Officers, no reasonable police officer could believe that even arguable probable caused existed to arrest Plaintiff Evatt, and there was no arguable probable cause for his arrest.

70.

The Defendant-Officers acted with conscious indifference and reckless disregard for the consequences of their actions such that an award of punitive damages is authorized under federal law.

71.

The actions of the officers were caused in part by the policy, customs and practice of the City of Atlanta, whose final policymakers, i.e. Chief Schierbaum and/or Mayor Dickens, upon information and belief issued the orders to arrest protesters, such as Plaintiff Evatt. At the very least, the City's final policymakers adopted and/or ratified the arrest of the protesters, including Plaintiff Evatt.

72.

The conduct of Defendant-Officers Douglas and Hordesky in causing and procuring the arrest and detention of Plaintiff Evatt without arguable probable cause

constituted an unreasonable and unlawful seizure of his person in violation of the Fourth Amendment.

73.

The law being clearly established in 2023 that an officer of the state cannot cause someone to be arrested and prosecuted without arguable probable cause, Defendants are not entitled to qualified immunity

**COUNT II**
42 U.S.C. § 1983
Retaliation in Violation of the First Amendment
(As to All Defendants)

74.

Paragraphs 1 through 73 are hereby re-alleged as if fully pled herein.

75.

Defendants deliberately initiated and/or caused the arrest and prosecution against Plaintiff Evatt because he exercised his rights to free speech and to peacefully participate in a protest.

76.

Plaintiff Evatt was targeted for arrest because he was part of a protest.

77.

Plaintiff Evatt was targeted for arrest because he was in a prominent position in the protest, i.e., in the front, holding a large sign.

78.

Plaintiff Evatt was targeted because his protected speech was against the actions of law enforcement.

79.

But for Plaintiff Evatt exercising his protected speech, he would not have been targeted by Defendants for arrest. This is evidenced by the fact that others who committed similar infractions but were not engaged in anti-law enforcement speech were not arrested and charged. For example, members of the press were in the roadway during the protest. When officers began making arrests, said members of the press were given an opportunity to return to the sidewalk. Plaintiff Evatt was not afforded this opportunity although he, like members of the press, was exercising his constitutional rights under the First Amendment.

80.

Defendants' actions were meant to punish Plaintiff Evatt for his exercise of his First Amendment rights and to prevent him from further speaking and continuing to protest by abruptly arresting him.

81.

Plaintiff Evatt alleges that no person has been arrested for being a Pedestrian in the Roadway when they were not engaged in the type of protected speech he was on the night in question.

82.

Had Plaintiff Evatt not been protesting, Defendant-Officers Douglas and Hordesky would not have arrested him. This is evidenced by the common knowledge that officers typically exercise their discretion not to arrest individuals in cases of jaywalking, even when probable cause is present.

83.

Retaliatory motive is further evidenced by the fact that, upon information and belief, City of Atlanta final policymakers, i.e., Chief Schierbaum and Mayor Dickens, ordered and/or adopted and ratified the arrest of all members of the alleged group, including Plaintiff Evatt, without regard for the separate acts of each individual and/or what each individual was doing. To be clear, Plaintiff Evatt was arrested simply because he happened to be present and exercising his First Amendment rights peacefully while others engaged in criminal acts that resulted in the destruction of property.

84.

The statements made by Mayor Dickens and Chief Schierbaum during the post-incident press conference further evidence the adoption and ratification of the unlawful arrest of Plaintiff Evatt.

85.

The intentional actions of Defendants in falsely accusing Plaintiff Evatt of felony crimes interfered with Plaintiff Evatt's right of freedom of speech and expression in violation of the First Amendment to the United States Constitution.

86.

The law being clearly established in 2023 that an officer of the state cannot make an arrest to retaliate against a person for their exercise of freedom of speech, Defendants are not entitled to qualified immunity.

## **COUNT III**

42 U.S.C. § 1983
Malicious Prosecution in violation of the Fourth Amendment
(As to Defendant-Officers Douglas, Hordesky, and John Doe(s))

87.

Paragraphs 1 through 86 are hereby re-alleged as if fully pled herein.

88.

Defendant-Officers Douglas, Hordesky, and John Doe(s) caused a criminal prosecution to be initiated against Plaintiff Evatt for the offense of Pedestrian in the Roadway.

89.

Defendant-Officers Douglas and Hordesky not only caused the prosecution to be initiated and arrest to be executed, but they caused the prosecution to continue

based on their arrest warrant affidavit and police report such that Plaintiff Evatt had to endure a criminal case which ultimately terminated in his favor.

90.

Defendant-Officers Douglas and Hordesky knew that there was no arguable probable cause to support the charges against Plaintiff Evatt, but they persisted in initiating, participating in, and assisting with that prosecution despite the complete lack of arguable probable cause.

91.

Said prosecution was based upon statements by Defendants that were either knowingly false or made with reckless disregard for the truth.

92.

Accordingly, said prosecution was carried on maliciously and without probable cause, and ultimately terminated in Plaintiff Evatt's favor.

93.

The law being clearly established in 2023 that an officer of the state cannot knowingly make false statements in order to cause someone to be prosecuted for an offense that is not supported by arguable probable cause, Defendants are not entitled to qualified immunity.

## COUNT IV

42 U.S.C. § 1983
Municipal Liability Theory A – Impermissible Unofficial Custom and Practice
(As to Defendant City of Atlanta)

94.

Paragraphs 1 through 93 are hereby re-alleged as if fully pled herein.

95.

The City is liable under the *Monell* doctrine due to final policymakers acquiescing to a longstanding, unofficial custom and practice of arresting individuals practicing protected speech in opposition of law-enforcement.

96.

Specifically, the City and its officers routinely arrest protesters for exercising free speech against law enforcement under the pretext of violating the City's Pedestrian in the Roadway ordinance with numerous instances of such arrests.

97.

For example, a mass arrest occurred on January 6, 2021, that is the subject of a pending lawsuit before this Court (Baker v. City of Atlanta et al. 1:21-cv-04186-MLB).

98.

The complaint in Baker alleges that on January 6, 2021, a number of protesters were corralled and arrested at Centennial Olympic Park. The plaintiff in Baker was

arrested and charged with Pedestrian in the Roadway. Ultimately, the <u>Baker</u> plaintiff's case was dismissed pursuant to a Motion for Nolle Prosequi filed by the City. Atlanta Municipal Court Case Number 21TR001179 reflects that the charges were dismissed for "evidentiary issues."

99.

The <u>Baker</u> case—much like the present case—involved an order given by a high-ranking officer to arrest all protesters on the scene. This leads to a conclusion that there is an either an unofficial custom and practice of arresting protesters under the pretext of violating the Pedestrian in the Roadway ordinance and final policymakers for the City—if not deliberately promoting this custom—are at the very least acquiescing to said practice.

100.

Another instance is captured in the lawsuits <u>Gadomski v. City of Atlanta</u> (Case No. 1:23-cv-04036-TWT) and <u>Smith v. City of Atlanta</u> (Case No. 1:23-cv-04038-TWT). The complaints in <u>Gadomski</u> and <u>Smith</u> allege that on September 8, 2021, a group of protesters exercised protected free speech in demonstrating against Cop City. During the protest, the protesters made sure to stay on the edge of the roadway in order to not impede the flow of traffic. Following police harassment, the protesters dispersed. When the protesters dispersed, officers began conducting arrests, charging individuals with Pedestrian in the Roadway. Upon information and belief,

plaintiffs Smith and Gadomski requested that their cases be bound over to the State Court of Fulton County, after which the State of Georgia declined to prosecute their cases.

101.

A third instance is captured in the lawsuit of <u>Dixon v. City of Atlanta</u> (Case No. 1:24-cv-02061). The complaint in <u>Dixon</u> alleges on May 14, 2022, a group of peaceful protesters peacefully marched against Cop City. The protesters carried signs, drums, and tree branches from the forest where the training facility was being built. The march ended at Inman Park, but when the group made it to Inman Park, officers began to arrest protesters, including plaintiff Dixon. While not listed in the Complaint, Dixon was charged with Pedestrian in Roadway. *See* Atlanta Municipal Court Case No. 22TR0380. Similarly to the <u>Baker</u> plaintiff, the charges lodged against the <u>Dixon</u> plaintiff were subsequently dismissed for "Evidentiary reasons."

102.

In the same transaction as <u>Dixon</u>, Ryan Michael Seal, a reporter, was also arrested at Inman Park on Pedestrian in the Roadway charges. There, Mr. Seal was released without charges. However, his reporter's notebook was confiscated and never returned. Upon information and belief, Mr. Seal was arrested because he was deemed to be a part of the "Stop Cop City" movement and because it was expected that his notebook would yield valuable intelligence about the movement. In other

words, Mr. Seal was arrested because of his First Amendment protected activities and in retaliation for those activities.

103.

All of these instances share three common themes with Plaintiff Evatt's case (1) the arrestees were charged with Pedestrian in the Roadway violations; (2) the arrestees' charges were dismissed or not pursued further; and perhaps most concerning of all, (3) the arrestees were involved in protests against law enforcement officials. Plaintiff Evatt anticipates discovery will uncover numerous other incidents from the 2020 summer protest period and from protests against the Cop City training center that show a similar pattern of conduct by the City of Atlanta and its officers.

104.

The numerous, recent instances of pretextual arrests of protesters on Pedestrian in the Roadway charges, as well as more broad examples of First Amendment violations committed by members of APD—with the full knowledge of the City of Atlanta—show deliberate indifference and acquiescence by the City as to the illegal use Pedestrian in the Roadway charges as a pretext to suppress and retaliate against law enforcement protesters' speech, including Plaintiff Evatt.

105.

This unofficial custom and practice of arresting and charging protestors for Pedestrian in the Roadway violations was the moving force behind the deprivation of Plaintiff Evatt's constitutional rights.

## **COUNT V**

42 U.S.C. § 1983
Municipal Liability Theory B – Final Policymaker Ratification
(As to Defendant City of Atlanta)

106.

Paragraphs 1 through 105 are hereby re-alleged as if fully pled herein.

107.

The City of Atlanta is liable under the *Monell* doctrine because a final policymaker adopted and ratified the unconstitutional act or decision of a subordinate to unlawfully arrest and charge Plaintiff Evatt.

108.

Mayor Dickens and/or Chief of Police Schierbaum acted as final policymaker for the City of Atlanta in the incident at issue in this case.

109.

Mayor Dickens and/or Chief Schierbaum directly delegated one or more of their duties to a subordinate, and discovery in this matter will uncover that said subordinate acted as a final policymaker on the night in question.

110.

The decision to arrest Plaintiff Evatt was not based upon an individualized case-by-case decision of reviewing each individual's conduct separately – but rather a categorical policy decision to arrest all individuals that were part of this protest – regardless of what they were actually doing.

111.

Because one or more final policymakers adopted, ratified and/or directed the unlawful arrest and charging of Plaintiff Evatt, the City of Atlanta is liable for the depravations of Plaintiff Evatt's Constitutional rights.

112.

Defendant-Officers Douglas and Hordesky also acted pursuant to direct instructions from a final policymaker for the City of Atlanta, to wit, Chief Schierbaum or Mayor Dickens.

## **COUNT VI**

Georgia Law
Assault and Battery Claims
(As to Defendants Douglas, Hordesky, and John Does)

113.

Paragraphs 1 through 112 are hereby re-alleged as if fully pled herein

114.

By placing Plaintiff Evatt under arrest without privilege, Defendant-Officers committed an assault and battery against Plaintiff Evatt in violation of O.C.G.A. §§ 51-1-13 and 51-1-14.

115.

As the facts alleged indicate, the officers acted with actual malice towards Plaintiff Evatt in subduing Plaintiff Evatt without issue.

116.

The City of Atlanta is directly responsible for the actions of its officers as they were carried out at the behest of Mayor Dickens and Chief Schierbaum.

117.

The City of Atlanta is liable for the intentional and negligent actions of the officers under the doctrine of Respondeat Superior for violations of state law.

## **COUNT VII**

O.C.G.A. § 51-7-40
Malicious Prosecution
(As to All Defendants)

118.

Paragraphs 1 through 117 are hereby re-alleged as if fully pled herein.

119.

Defendants initiated a criminal prosecution against Plaintiff Evatt for felony offenses, and they knew or should have known that no arguable probable cause existed to believe that Plaintiff Evatt had violated any laws or committed any criminal acts.

120.

Final policymakers for the City of Atlanta ordered, instructed, or ratified the decision to charge Plaintiff Evatt with the felony charge for which there was not even arguable probable cause.

121.

Defendants initiated and maintained the arrest and prosecution of Plaintiff Evatt with malice, as interpreted under Georgia law.

122.

This malice is evidenced by Defendant Hordesky stating the City is going to make a big deal out of the protest and your arrest.

123.

These criminal prosecutions, by both Fulton County and the Georgia Attorney General's office, terminated favorably for Plaintiff Evatt.

124.

As a result of the arrest and prosecution, Plaintiff Evatt has suffered physical, emotional, mental and financial injury, entitling him to recover nominal, compensatory and punitive damages against Defendants for the loss of his rights under this claim, in an amount to be determined by the enlightened conscience of the jury.

## **DAMAGES**

125.

Paragraphs 1 through 124 are hereby re-alleged as if fully pled herein.

126.

As a direct and proximate result of the above described conduct of Defendants, Plaintiff Evatt was unreasonably and unlawfully arrested and prosecuted without arguable probable cause and as a retaliation for exercising his First Amendment rights, was imprisoned and deprived of his liberty, was subjected to physical restraint, confinement, and mental suffering and emotional distress that is expected to continue into the future, suffered physical ailments in the form of scabies, and was forced to incur other economic and non-economic losses for which Defendants are liable to Plaintiff Evatt in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

127.

The aforementioned misconduct of Defendant-Officers Hordesky, Douglas, and John Does rose to such a level of bad faith, willfulness, and reckless disregard as to authorize the imposition of punitive damages against each one of them.

128.

Plaintiff is also entitled to recover reasonable attorney's fees and expenses of litigation pursuant to 28 U.S.C. §1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Evatt requests this Court:

a) Hold a trial by jury on all triable issues;

b) Enter judgment in favor of Plaintiff Evatt against each Defendant for nominal, special, compensatory and punitive damages for each violation of Plaintiff Evatt's constitutional rights in an amount to be determined by the enlightened conscious of fair and impartial jurors;

c) Award Plaintiff Evatt attorney's fees and reasonable expenses of litigation under 42 U.S.C. § 1988 and as authorized under Georgia Law.

d) That all costs of this action be taxed against Defendants;

e) Grant such other and further relief as this Court deems just and proper.

*[signature page to follow]*

34

**BANKS WEAVER, LLC**

*/s/ Gabe Banks*
*/s/ Payden Grizzle*
Gabe Banks
Georgia Bar No. 721945
Payden Grizzle
Georgia Bar No. 270323
*Attorneys for Plaintiff*

100 Peachtree Street, NW
Suite 2650
Atlanta, Georgia 30303
gabe@banksweaver.com
payden@banksweaver.com
Phone: (404) 891-9280
Fax: (404) 891-9283

**THE W.H. THOMAS FIRM LLC**

*/s/ William H. Thomas Jr.*

WILLIAM H. THOMAS JR.
State Bar No. 706610
*Attorney for Plaintiffs*

511 East Paces Ferry Road
Atlanta, Georgia 30305
bill@whthomasfirm.com
Phone: (404) 897-3523
Fax: (678) 965-1781