**IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **GRAHAM EVATT,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF ATLANTA, OFFICER JOHN HORDESKY, IN HIS INDIVIDUAL CAPACITY, OFFICER JAMES DOUGLAS, IN HIS INDIVIDUAL CAPACITY,**<br><br>**Defendants.** | **Case No. 1:25-CV-00214-MLB**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT CITY OF ATLANTA'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE PLAINTIFF'S SECOND AMENDED COMPLAINT**

COME NOW, Defendant City of Atlanta ("City") by and through undersigned counsel hereby files this Reply Brief in further support of its Motion to Dismiss.[1] Officers show this honorable court the following:

**ARGUMENTS AND CITATIONS OF LAW**

In opposition Plaintiff attempts to assert that all parties concede that Plaintiff never committed the charges alleged. However, such is not the case as noted in reply herein and within Officers' reply brief that is filed contemporaneously herewith. What Plaintiff was arrested for, and what he was seized for following legal process

[1] This reply brief includes rebuttal arguments.

are two separate matters for which the Officers herein cannot be held liable, as their only involvement was limited to Plaintiff's warrantless arrest as evinced by the warrant affidavits and their reports. For a warrantless arrest, "[a]n arrested individual is no more seized when he is arrested on [several] grounds rather than one," and therefore the only question relevant to the object reasonableness of a seizure is whether probable cause for *some* crime exists. *Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020)(citing *Devenpeck v. Alford*, 543 U.S. 146 153 (2004)).

## I. PLAINTIFF'S CLAIMS AGAINST THE CITY ARE NOT DERIVATIVE OF HIS MALICIOUS PROSECUTION CLAIM

As argued within the Officers' briefing, their only involvement with Plaintiff was their warrantless arrest of him, as is evinced by the warrant affidavits and their reports.[2] Because the Officers' involvement with Plaintiff is limited to the arrest, any extended pretrial seizure is severed from their actions. "After all, any extended pretrial seizure requires a 'judicial determination of probable cause,' *Gerstein v. Pugh*, 420 U.S. 103, 114 which often severs the causal chain between a warrantless arrest and pretrial detention," *see Barts v. Joyner*, 865 F.2d 1187, 1195–96 (11th Cir. 1989). The warrant affidavits are clear in that they are premised on the knowledge and belief of Officer Ronald Sluss, not the arrest report or supplemental reports of

[2] The Arrest Report and supplemental report are referenced within Plaintiff's complaint, and responses in opposition, are central to Plaintiff's claims and a certification is annexed to verify their authenticity and therefore the City moves to incorporate them by reference herein. *See Johnson v. City of Atlanta*, 107 F.4 1292, 1300 (11th Cir. 2024).

the Officers. (*See* Exhibit "**1**" to initial brief). Plaintiff's contention that his pretrial seizure is premised on the Officers' statements to the prosecutors are debunked in the face of the arrest warrants that demonstrate otherwise, as the affiant that went before the warrant issuing court was Officer Ronald Sluss. *See id*. Therefore, Plaintiff's derivative claims against the City which are premised on the supposed actions (i.e. malicious prosecution) of the Officers, fail because, viewing the allegations in the light most favorable to the Plaintiff, and in viewing the warrant affidavits, arrest report and supplemental report, the Officers did not institute or continue the legal process, as their actions were limited solely to the warrantless arrest of Plaintiff. "Although a person suffers a seizure at the time of a warrantless arrest, the seizure is not pursuant to legal process because it 'occur[s] prior to the time of arraignment [or indictment]' and the commencement of the judicial pleadings." (Doc. 26)(citing *see Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004), *abrogated on other grounds by Williams*, 965 F.3d at 1159-62). "So a warrantless arrest cannot – by itself – give rise to a malicious prosecution claim." (Doc. 26)(citing *Williams*, 965 F.3d at 1158 (distinguishing false arrest and malicious prosecution claims)). Accordingly, the claims against the City, which are "derivative

claims" premised on the supposed malicious prosecution/actions of the Officers fail, since the Officers actions were limited to the Plaintiff's warrantless arrest.[3]

## II. PLAINTIFF CANNOT ESTABLISH THAT OFFICERS MADE MISSTATEMENTS OR THAT THEIR STATEMENTS SUPPORT THE SUBJECT WARRANTS

In response Plaintiff further argues that even though the Officers were not the affiants they can still be held liable for malicious prosecution, as even "individual[s] who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant[.]" *Williams*, 965 at 1165. Although true, Plaintiff's argument nonetheless fails because 1) Plaintiff never identified which statements of the Officers were "knowingly false,"[4] and in reviewing their

---

[3] Notably, in opposition, Plaintiff asserts,

> "[h]is seizure was pursuant to further legal process, **because the state court then held a hearing in which the prosecutor made a variety of unsupported statements about Mr. Evatt** (including that he was the "ringleader" in violence that took place at the demonstration), and at which, the magistrate judge issued an order setting a $355,000 bond and numerous bond conditions that constituted a significant, ongoing deprivations of liberty beginning on January 23, 2023." (Doc. 37)(citing Doc. 29, ¶¶ 57-65, 105-10)). (emphasis added).

This assertion, in and of itself, alleges that Plaintiff's seizure pursuant to the legal process was instituted and continued by the state *via* the prosecutor not by the Officers. (Response in opposition, pg. 12 of brief, 13 of 24 per the filing).

[4] To establish that the officials initiated criminal proceedings against him without probable cause, Plaintiff must allege that each official made false statements or omitted information "either intentionally or in reckless disregard for the truth" ***and*** that "after deleting the misstatement[s], the [warrant] affidavit is insufficient to establish probable cause." *Williams*, 965 F.3d at 1165 (internal quotation marks omitted). (emphasis added).

documents in Exhibit "**2**," the statements therein are proven to be true as they are supported by the body worn camera footage previously submitted to the Court in the earlier briefing associated with the motion to dismiss Plaintiff's amended complaint. (Doc. 16). 2) The warrant affidavits clearly state that they are based on the knowledge and belief of Officer Ronald Sluss, not the Officers' reports or statements. *See* Exhibit "**1**." It is therefore axiomatic that the Plaintiff cannot establish that the Officers intentionally or recklessly made misstatements or omissions necessary to support the warrant, necessitating dismissal.

## III. PLAINTIFF'S CLAIMS OF MUNICIPAL LIABILITY PREMISED ON OFFICERS ACTIONS FAILS BECAUSE OFFICERS DID NOT PERPETRATE A CONSTITUTIONAL VIOLATION

In opposition, Plaintiff argues that Defendants fail to identify any basis for dismissal of his malicious prosecution claim and therefore there is a viable constitutional claim from which municipal liability can derive. (Doc. 37, p. 16, "17 of 24"). However, that is incorrect. Defendants[5] bases for dismissal are that the Defendants herein cannot be held liable, because 1) the Officers only actions/interactions with the Plaintiff are limited to the warrantless arrest which severs any connection to the claim of malicious prosecution; 2) that the authenticated documents demonstrate that the warrants were not based on either of the Officers' report or alleged statements to prosecutors, as the affiant (Officer Ronald Sluss)

[5] Meaning the City and the Officers.

states that the affidavit is based on ***his*** knowledge and belief; and 3) that the Officers' statements were truthful as verified by previously submitted body worn camera. And therefore, since Officers "warrantless arrest cannot – by itself – give rise to a malicious prosecution claim," *Williams*, 965 F.3d at 1158, which the City's liability is premised on, Plaintiff cannot maintain said claims against the City as there was no constitutional violation perpetrated by the Officers.

## IV. PLAINTIFF'S MUNICIPALITY LIABILITY CLAIMS FAIL

### *a. Plaintiff fails to allege Municipal liability under a theory of Official Policy*

In opposition Plaintiff erroneously states that the City contends he cannot establish official policy municipal liability because he cannot demonstrate that the City enacted the alleged policy through its legislative process, which according to the Plaintiff, the City asserts is the only way to state a claim of an official policy. (Doc. Pg. 17 (18 of 24)). However, that is incorrect as within the initial brief, the City concedes that an official policymaker can establish the existence of an unconstitutional municipal policy citing *Martinez v. City of Opa-Locka*, 971 F.2d 708, 713 (11th Cir. 1992), and notes that the Complaint is devoid of any such identification of said policymaker or that Count III's claim of Official Policy is premised on a policymaker. (Doc. 17). In fact, Plaintiff attempts to allege official policy liability premised on a policymaker's action in Count V, which is entitled,

**Municipal Liability Theory C – Final Policymaker Ratification**. (Doc. 29). (emphasis). If the City is to understand Plaintiff's argument correctly, in this vein Count III and V are duplicative of one another, potentially raising shotgun pleading issues. *See McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir. 2019); *see also Weiland v. Palm Beach Cnty., Sheriff's Off.,* 792 F.3d 1313, 1322-23 (11th Cir. 2015). In the initial brief and reiterated herein, the City argues that Plaintiff fails to plausibly plead municipal liability premised on a theory of Official Policy because he fails to establish 1) an official policy adopted by city council, 2) fails to allege that this Count is premised on action of an official policy maker, which would be duplicative of Count V, or identify said policymaker; and 3) fails because there is no constitutional injury at play which is at the core of municipal liability, since the Officers herein did not institute or continue the criminal prosecution as their actions were solely limited to the Plaintiff's warrantless arrest. Separately, Plaintiff's claims are simply "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a Rule 12 (b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, Plaintiff's municipal liability claim premised on a theory of Official Policy fails necessitating dismissal.

### *b. Plaintiff fails to allege Municipal liability under a theory of Unofficial Custom and Practice*

Within its initial brief the City argued that Plaintiff failed to allege municipal liability premised on unofficial custom and practice, because the Plaintiff did not plausibly plead a longstanding and widespread practice "of seizing and issuing warrants against protestors if vandalism occurred, regardless of whether the protestors ever committed vandalism," that officials must have known but failed to stop which resulted in the similar arrest of the Plaintiff. (Docs. 29 and 34). *See Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (1991)(citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Plaintiff relied on cases still pending before this Court where no determination has been made as to a longstanding and widespread practice, that for all intents and purposes are simply allegations, which are dissimilar to the underlying facts herein as argued in the initial brief, and therefore cannot suffice to demonstrate the aforesaid unofficial policy. *Watts v. City of Hollywood, Florida*, 146 F.Supp.3d 1254, 1272 (S.D. Fl. 2015).

Defendants[6] previously established that Plaintiff was "seized" by the Officers based on sufficient probable cause that he violated the Pedestrian in the Roadway violation. (Doc. 26). Therefore, Plaintiff cannot demonstrate based on the

---

[6] Meaning Officers and the City.

circumstances herein that seizures similar to his, at the hands of the Officers, violate a constitutional right or is a longstanding and widespread issue/unofficial policy that the City should have known of and failed to stop which impacted him, because the seizure of Plaintiff by the Officers did not violate his constitutional rights. Plaintiff does not allege a longstanding and widespread practice of issuing constitutionally infirm arrest warrants and seizing protestors pursuant thereto, nor can he based on the underlying facts since the Officers' actions herein were limited to his warrantless arrest. Accordingly, Plaintiff's "in the alternative" municipal liability claim premised on a theory of unofficial policy fail necessitating dismissal.

***c. Plaintiff fails to allege Municipal liability under a theory of Final Policymaker Ratification***

In opposition Plaintiff claims that the City's arguments are unpersuasive. (Doc. 37). Plaintiff argues that his municipal liability claim premised on a theory of final policymaker ratification bypasses the finding of probable cause for Plaintiff's arrest as it relates to the Pedestrian in the Roadway, arguing that the claim is based on his "plausibly plead" malicious prosecution claim. (Doc. 37). He further argues that both Mayor Andre Dickens and Chief Darin Schierbaum are final policymakers who ratified the actions herein. (Doc. 37). Relying on *St. Louis, v. Praprotnik*, 485 U.S. 112, 117 (1988), Plaintiff argues that since the aforesaid "final policymakers" approved the officers' decision and reasoned their ratification is attributable to the City because the decision is final.

### i. Mayor Andre Dickens is not a Final Policymaker on matters of law enforcement

In opposition, Plaintiff argues that Mayor Dickens is a final policy maker because in emergency circumstances he has temporary police powers, and that if there is any doubt, this is a question reserved for summary judgement or trial. (Doc. 37). However, to the contrary, this is a matter of law, properly before this Court on a motion to dismiss. *See Baker, v. City of Atlanta*, 662 F. Supp.3d 1308, 1320 (2023)(Court determined, in viewing Atlanta Code of Ordinances § 98-26, that the Chief of Police has final policymaking authority on matters of law enforcement)(citing s*ee McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996)("We may not assume that final policymaking lies in some entity other than that in which state law places it. To the contrary, we must respect state and local law's allocation of policymaking authority.")).

Respecting state and local laws, City of Atlanta Ordinance § 2-182 (2), as it relates to matters of law enforcement, Mayor Andre Dickens does not have final policy making authority as it is vested in the Chief of Police. (Doc. 34). In times of emergency, the Mayor has temporary power which the city council can reverse. (Doc. 34). Since the City Council has the power to reverse any of the Mayor's actions/decision made under this temporary power, according to the Eleventh Circuit Court of Appeals decision in *Holloman*, the Mayor is not a final policymaker on matters of law enforcement. *Holloman ex rel. Holloman, v. Harland*, 360 F.3d 1252,

1292 (11th Cir. 2004)(An official is the final policymaker on a given subject matter when "his decisions have legal effect without further action by the governing body" and "the governing body lacks the power to reverse the [official's] decision"). Unlike Plaintiff's baseless assertion, the determination of who is a policymaker on a particular subject is a matter of law to be decided by the Court. Based on the averments above, Mayor Andre Dickens does not have final policymaking authority on matters of law enforcement, and therefore his alleged adoption/ratification herein cannot impose liability on the City.

**ii. Chief Darin Schierbaum did not ratify an unconstitutional action**

The City does not contend that the Chief of Police has final policymaking authority in matters of law enforcement. The City argues that Chief Schierbaum did not adopt or ratify any unconstitutional actions because the Officers' actions herein, (their warrantless arrest of the Plaintiff) was lawful, as the arrest was premised on probable cause which has already been determined. (Doc. 26). To the extent that Plaintiff asserts that Chief Darin Schierbaum adopted or ratified the Officers warrantless arrest of the Plaintiff for the charges other than pedestrian in the roadway, the Officers' actions were still lawful as the any-crime rule undisputably applies to warrantless arrests under the Fourth Amendment. *Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020)(citing *Devenpeck v. Alford*, 543 U.S. 146 153

(2004)). For a warrantless arrest, "[a]n arrested individual is no more seized when he is arrested on [several] grounds rather than one," and therefore the only question relevant to the object reasonableness of a seizure is whether probable cause for *some* crime exists. *Id*. Accordingly, Plaintiff's claim of municipal liability premised on final policymaker ratification fails, necessitating dismissal.

## CONCLUSION

Based on the foregoing, the City requests that this Court dismiss Plaintiff's second amended complaint in its entirety and any other relief this Court deems just and proper.

Respectfully submitted this 4th day of April 2026.

*/s/ Sandy Milord*
**SANDY MILORD**
Deputy Division Chief
Georgia Bar No. 622391
smilord@atlantaga.gov
(470) 858-8816 *Direct*

**JARED CASTO**
Associate Attorney
Georgia Bar No. 216492
jacasto@atlantaga.gov
(470) 858-1702 *Direct*

***Attorneys for Defendants City of Atlanta, Officer John Hordesky, and Officer James Hordesky***

**CITY OF ATLANTA LAW DEPARTMENT**
55 Trinity Avenue, SW, Suite 5000

Atlanta, Georgia 30303-3520
Office (404) 546-4100 *(main)*

# EXHIBIT "2"

## Case # 230211445 - Arrest Report

| REPORT DATE / TIME | ZONE / BEAT / SUBDIVISION 4 / SUBDIVISION 5 | EVENT START DATE / TIME - EVENT END DATE / TIME |
|---|---|---|
| Jan 21, 2023 22:38 | 5 / 509 | Jan 21, 2023 17:33 - 18:15 |

| REPORT AUTHOR | BODY WORN CAMERA? |
|---|---|
| James Douglas #[redacted] | 1. Yes -- Video Footage Available |

REPORT TAKEN LOCATION

265 PEACHTREE ST NE, ATLANTA, GA 30303

## NARRATIVE

On January 21, 2023 I, Officer J. Douglas (Unit 5578) was assigned to the Zone 5 Field Investigations Team and tasked with being a react team for the "Stop Cop City" planned protest which was being held at Underground Atlanta that evening. This was in response to an officer involved shooting which occurred earlier in the week where a Georgia State Trooper was ambushed and shot, and the suspect was killed afterwards. In the days afterwards, there had been multiple threats of violence made against law enforcement and their supporters.

As we stood by outside of the protest footprint, we monitored the group's activities through FUSUS cameras located throughout the area. The group's size appeared to be in the range of 150-200 individuals, most of which were wearing all or mostly black clothing with face coverings. Throughout the crowd were several signs showing their support for the "Stop Cop City" and the "Defend the Atlanta Forest" movements. After a short period of time, the group began to take to the streets, initially heading south on Pryor St. before circling around and heading north on Peachtree St. This was particularly worrisome as the Atlanta Police Foundation was located in that direction, and the group had already made statements about causing damage to this organization's properties. Only a short time after taking to the streets, members of the group began shooting off fireworks into the air and lighting smoke cannisters. Just before being told to respond to the location, I personally observed members of the group vandalizing property by spray painting "Stop Cop City" on property that they passed.

While we responded, I heard over the radio that the group was now launching fireworks at police vehicles and breaking windows. There were only a small number of officers at that scene which was placing them in a potentially very dangerous situation. Just before arriving on scene, an officer stated over the radio that a firework had been launched underneath a patrol vehicle, and was now on fire. Having worked in the downtown area in Atlanta for several years, and worked several legitimate peaceful protests, as well as the riots from the summer of 2020, the atmosphere mirrored that of the riots from 2020, and not that of a lawful protest.

As we turned south on to Peachtree St. from Baker St. I observed several people running away from the crowd of individuals marching in the street towards us. As these people passed by us, they were yelling statements such as "they're rioting down there" and "they're breaking stuff" pointing back towards the group. I continued to walk towards the group, and as I did so, several fireworks were thrown in my direction and exploded in close proximity to myself and several officers. As I closed the distance, several more fireworks were thrown, one of which passed within approximately a foot of my left side, exploding behind me. It should be noted that as I was approaching the group and having fireworks thrown at me, none of the members of the group attempted to leave. They slowly back pedaled while holding their sign which read "Trees Give Life. Police Take It." Behind that were several posters that I couldn't read due to the smaller font, but recognized the face on it as the person who shot and injured a Georgia State Patrol Trooper and was subsequently killed by return fire.

I put my focus on one individual who had his face covered with a mask and was wearing all black clothing holding the main sign. I approached him as he stood in the middle of the roadway in an area without a crosswalk and went to grab him. He immediately pulled away from me in an attempt to get away at which point I grabbed higher up on his clothing and was able to pull him down to the ground. While I was attempting to place this subject into custody, another subject in all black clothing with a facemask and backpack ran up and attempted to punch me. He was not successful and unfortunately was able to disappear into the large crowd who were still in fairly close proximity to the arrest location. I was then able to place the male, who I was able to identify as Mr. Graham Evatt, into police custody. We later transported him to the Fulton County Courthouse where arrest warrants were taken out.

Mr. Evatt was charged with the following, Criminal Damage to Property 2nd Degree (OCGA 16-7-23), Interference with Government Property (OCGA 16-7-24), Domestic Terrorism (OCGA 16-11-220)*, Riot (OCGA 16-11-30), Unlawful Assembly (OCGA 16-11-33), Party to a Crime (Arson) (OCGA 16-2-20), Obstruction (OCGA 16-10-24), and Pedestrian in Roadway (OCGA 40-6-96).

*There is no option in Mark43 under charges for Domestic Terrorism.

The keys listed in the property/evidence summary report were released to Mr. Evatt and not turned into the annex.

## ARREST #230211445-2 (ARRESTED ON SCENE (FULTON COUNTY JAIL))

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| James Douglas #[redacted] Jan 22, 2023 04:29 (e-signature) | Michael Jones #[redacted] Jan 23, 2023 20:54 (e-signature) |
| PRINT NAME | PRINT NAME |
| James Douglas #[redacted] | Michael Jones #[redacted] |

| ARREST DATE / TIME | ARREST TYPE | ARRESTING OFFICER |
|---|---|---|
| Jan 21, 2023 18:05 | Arrested on Scene (Fulton County Jail) | James Douglas #[redacted] |

CHARGE TYPE
General Felony Arrest

*ARRESTEE*



| ARRESTEE NAME (LAST, FIRST MIDDLE) | SEX |
|---|---|
| D-1 Evatt, Graham P. | Male |

| DOB / ESTIMATED AGE RANGE | RACE / ETHNICITY |
|---|---|
| [redacted] | White / Not Hispanic Or Latino |

| PHONE NUMBER | EMAIL ADDRESS |
|---|---|
| | |

HOME ADDRESS
[redacted]

ARRESTEE WAS ARMED WITH
Unarmed

*ARREST LOCATION*

LOCATION NAME / STREET ADDRESS/LOCATION NAME / APT, UNIT, STE / DESCRIPTION
265 PEACHTREE ST NE

| CITY | STATE | ZIP | COUNTRY CODE |
|---|---|---|---|
| ATLANTA | GA | 30303 | US |

| LOCATION CATEGORY | ZONE / BEAT / SUBDIVISION 4 / SUBDIVISION 5 |
|---|---|
| Highway/ Road/ Alley/ Street/ Sidewalk | 5 / 509 |

*CHARGES*

| CHARGES - 1 | | | COUNT |
|---|---|---|---|
| 16-7-23\|CRIM DAMAGE TO PROP 2ND DEG | | | 1 |
| ORIGINAL FILE # | OFFENSE CODE | OFFENSE START DATE | OFFENSE END DATE |
| 230211445 | Other Offenses (90Z) | Jan 21, 2023 17:33 | Jan 21, 2023 23:59 |
| CHARGES - 2 | | | COUNT |
| 16-7-24\|INTERF W/GOVT PROPERTY | | | 1 |
| ORIGINAL FILE # | OFFENSE CODE | OFFENSE START DATE | OFFENSE END DATE |
| 230211445 | Other Offenses (90Z) | Jan 21, 2023 17:33 | Jan 21, 2023 23:59 |
| CHARGES - 3 | | | COUNT |
| 16-11-30\|RIOT | | | 1 |
| ORIGINAL FILE # | OFFENSE CODE | OFFENSE START DATE | OFFENSE END DATE |
| 230211445 | Other Offenses (90Z) | Jan 21, 2023 17:33 | Jan 21, 2023 23:59 |
| CHARGES - 4 | | | COUNT |
| 16-11-33\|UNLAWFUL ASSEMBLY | | | 1 |
| ORIGINAL FILE # | OFFENSE CODE | OFFENSE START DATE | OFFENSE END DATE |
| 230211445 | Other Offenses (90Z) | Jan 21, 2023 17:33 | Jan 21, 2023 23:59 |
| CHARGES - 5 | | | COUNT |
| 16-2-20\|PARTY TO A CRIME | | | 1 |
| ORIGINAL FILE # | OFFENSE CODE | OFFENSE START DATE | OFFENSE END DATE |
| 230211445 | Other Offenses (90Z) | Jan 21, 2023 17:33 | Jan 21, 2023 23:59 |
| CHARGES - 6 | | | COUNT |
| 16-10-24.A\|OBSTRUCTION OF OFFICERS-MISD | | | 1 |
| ORIGINAL FILE # | OFFENSE CODE | OFFENSE START DATE | OFFENSE END DATE |
| 230211445 | Other Offenses (90Z) | Jan 21, 2023 17:33 | Jan 21, 2023 23:59 |
| CHARGES - 7 | | | COUNT |
| 40-6-96\|PEDESTRIAN WALKING IN ROADWAY | | | 1 |
| ORIGINAL FILE # | OFFENSE CODE | OFFENSE START DATE | OFFENSE END DATE |
| 230211445 | Other Offenses (90Z) | Jan 21, 2023 17:33 | Jan 21, 2023 23:59 |

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| James Douglas #[redacted] Jan 22, 2023 04:29 (e-signature) | Michael Jones #[redacted] Jan 23, 2023 20:54 (e-signature) |
| PRINT NAME | PRINT NAME |
| James Douglas #[redacted] | Michael Jones #[redacted] |

# Historical Supplement Report 2024-HSR-00114269

**Primary Officer:** Hordesky, John ([redacted]
**Assigned District:** TRAINING

## Overview

### Incident Overview

**Case Number:** 230211445 **Record Number:** 230211445-5 **Supplement Type:** Incident Supplement
**Supplement Type Details:** Additional Narrative: yes **Primary Agency:** Atlanta Police Department **Report Date:** 01/22/2023
**Report Time:** 00:47 **Incident From Date:** 01/21/2023 **Incident From Time:** 17:33 **Incident To Date:** 01/21/2023
**Incident To Time:** 23:15

## Names

### Evatt, Graham P.

**Person Role:** Arrestee

Identity
**Type:** Known **Last Name:** Evatt **First Name:** Graham **Middle Name:** P. **DOB:** [redacted]/[redacted]/[redacted] **Sex:** Male
**Race:** White **Ethnicity:** Not Hispanic or Latino

Contact
**Address Type:** Home **Location:** [redacted]

Identifying Documents
**ID Type:** Driver's License **Issuing State:** Georgia **ID Number:** [redacted] **Class:** CLASS D

Description
**Status:** Alive **Age:** 20 **Height:** 6' 0" **Weight:** 141 **Eye Color:** Blue **Hair Color:** Brown

## Vehicles

**None reported.**

## Property

**None reported.**

## Narrative by Hordesky, John

On 1-21-2023 at approximately 6:00 Pm., I, Officer J Hordesky (Unit 5577) and J Douglas (Unit 5578) were riding together when we responded in an emergency capacity to a large group of people who were actively damaging property and starting to riot on Peachtree St in front of 191 Peachtree St (The Atlanta Police Foundation).

Based on radio traffic that was being given out of the large group's current location and direction of travel, myself, Officer Douglas and numerous other Atlanta Police Officers drove to the intersection of Peachtree St and Baker St in an attempt to get a head of the group's advancement.

When we arrived at the intersection, we exited our marked patrol vehicles and began to walk towards the large group of people that were actively walking up Peachtree St taking up all lanes of travel.

Myself and Officer Douglas began to approach the large group that was walking towards us. As we were approaching the group, individuals in the large crowd were throwing fireworks at us that were exploding in very close proximity to us.

We then approached the center of the group and focused on several individuals wearing all black clothing and carrying a long banner that had writing on it.

As Officer Douglas attempted to place an individual in custody, I observed another individual wearing all black attempt to punch Officer Douglas and prevent him from taking the first individual into custody.

As I attempted to intervene in that struggle a third male in all black attempted to punch me.

When I went to then address that third male, I realized that Officer Douglas was able to pull the first male away from the crowd and placed him on the ground.

I then stopped engaging the larger crowd and went back to help Officer Douglas.

I then placed flex cuffs on the male that Officer Douglas had on the ground, later identified as (EVATT, Graham).

At that time, we attempted to walk Mr. EVATT to our patrol vehicle but he refused to stand on his own. We then carried Mr. EVATT several feet away from the incident location and placed him on the sidewalk. I then ran back to our patrol vehicle and drove it to where Mr. EVATT was placed.

Mr. EVATT was then placed in the rear of our patrol vehicle without incident.

We then transported Mr. EVATT to the Fulton County Courthouse.

That was the end of my involvement with Mr. EVATT.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| GRAHAM EVATT, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| Plaintiff, | ) | 1:25-CV-00214-MLB |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF ATLANTA, | ) | |
| OFFICER JOHN HORDESKY, | ) | |
| in his individual capacity, | ) | |
| OFFICER JAMES DOUGLAS, | ) | **JURY TRIAL DEMANDED** |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATION OF RECORDS**

**STATE OF GEORGIA**
**FULTON COUNTY**

The undersigned, as Records Custodian for the **ATLANTA POLICE DEPARTMENT (APD)** certifies that the attached documents to **Exhibit "2"** to the City of Atlanta's and Officers Douglas and Hordesky's Reply Briefs in further support of their Motions to Dismiss represent a true and correct copy of the original Arrest Report and Supplemental Report in the underlying matter which are contained within the possession of the **APD**. This certification is pursuant to Federl Rules of Evidence 803 and 902. It is further certified that: (A) originals of the records of said facility are maintained under the direction, custody and control of the Records Custodian; (B) said records were made at or near the time of the described acts,

events, conditions, opinions, or diagnoses; (C) said records were made by, or from information transmitted by, a person with personal knowledge and a business duty to report said information; (D) said records were kept in the course of a regularly conducted business activity; and (E) it was the regular practice of that business activity to make a memorandum, report, record, or date compilation.

Sgt. T. Williams
Signature – Custodian of Records

Sgt. Timothy Williams
Print Name – Custodian of Records

Atlanta Police Department
Name of Facility

Sworn to and subscribed before me, this 4th day of May , 2026.

Ariel C D Manning
Notary Public State of Georgia

My Commission Expires: 7/13/2027

Ariel C D Manning
NOTARY PUBLIC
DeKalb County, Georgia
My Commission Expires 7/13/2027

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d), Counsel for the City hereby certify the foregoing has been prepared in compliance with Rule 5.1(B) in 14 point, Times New Roman font typeface.

*/s/ Sandy Milord*
**Sandy Milord**
Deputy Division Chief

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT Of GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **GRAHAM EVATT,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE CITY OF ATLANTA**<br>**OFFICER JOHN HORDESKY,**<br>**In his individual capacity,**<br>**OFFICER JAMES DOUGLAS,**<br>**In his individual capacity,**<br>**OFFICER JOHN DOE(S) 1-10,**<br><br>**Defendants.** | **CIVIL ACTION FILE NO.**<br>**1:25-CV-00214-MLB**<br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

This is to certify that on this day ***DEFENDANT CITY OF ATLANTA'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT*** was filed electronically with the Clerk of Court using the CM/ECF system, which will provide notification to the following counsel of record:

**BANKS WEAVER, LLC**
Gabe Banks
Payden Grizzle
100 Peachtree Street, NW, Suite 2650
Atlanta, Georgia 30303
gabe@banksweaver.com
payden@banksweaver.com

**THE W.H. THOMAS FIRM LLC**
William H. Thomas, JR.
511 East Paces Ferry Road
Atlanta, Georgia 30305
Bill@whthomasfirm.com

**CROSS KINCAID BASKAM LLC**
Meredith C. Kincaid
315 W. Ponce de Leon Avenue, Suite 715
Decatur, Georgia 30030
meredith@crosskincaid.com

Respectfully submitted this 4th day of May 2026.

***/s/ Sandy Milord***
Sandy Milord
Deputy Division Chief
GA Bar No.: 622391

**JARED CASTO**
Associate Attorney
Georgia Bar No. 216492
(470) 858-1702 *Direct*

**City of Atlanta Law Department**
55 Trinity Avenue, SW, Suite 5000
Atlanta, GA 30303
(404) 546 - 4146
smilord@atlantaga.gov
jacasto@atlantaga.gov